IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MNDUSTRIES, INC., a Georgia Corporation | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17 C 7226 |
| | ) | |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| MC MACHINERY SYSTEMS, INC., | ) | |
| a Delaware Corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff MNdustries, Inc. filed a three-count first amended complaint against defendant MC Machinery Systems, Inc., alleging that defendant sold them four defective Mitsubishi laser-cutting machines, and that MC Machinery breached both express and implied warranties by failing to fix the machines. The first amended complaint alleges a breach of an express warranty (Count I), a breach of implied warranties (Count II), and fraud (Count III). Defendant has moved to dismiss the first amended complaint in its entirety for failure to state a claim under Fed. R. Civ. P. 12(b)(6). For the reasons described below, defendant's motion is granted in part and denied in part.

## **BACKGROUND**[1]

On July 14, 2014, plaintiff, a Georgia corporation that was in the business of fabricating sheet metal using precise laser cutting machines, purchased a Mitsubishi laser-cutting machine from defendant. In 2015, defendant bought three additional laser-cutting machines, and The

---

1 The factual background is taken from the allegations of plaintiff's complaint, which are presumed true for purposes of this motion. Firestone Fin. Corp. v. Meyer, 796 F.3d 822, 826 (7th Cir. 2015).

River Navigation System, which were to be delivered to plaintiff's Georgia facility in September, October, and December of that year. The first laser-cutting machine, however, was not installed until February 18, 2016, and the River System was not installed at that time. Plaintiff alleges that this delay was caused solely by defendant. The remaining three machines were installed on February 25, 2016; March 2, 2016; and March 29, 2016. The River Navigation System was delivered on March 11, 2016.

The first and second machines began having problems with inconsistent cutting during February of 2016. The third and fourth machines began having issues during March of 2016, and defendant sent a laser services technician named Tracy Marcotte to repair the machines. After changing the laser gas bottle, Marcotte indicated the problems were solved. Plaintiff, however, alleges that the lasers were still not cutting consistently. On April 4, 2016, the problems persisted and were noted by Marcotte in his service reports. The laser beam on the third machine was moving and causing improper and inconsistent cuts, and the cutting head on the fourth machine fell off during use. On April 11, 2016, the problems were still present, and the machines were not performing at their promised rate. During that visit, Marcotte adjusted the mirrors. This, however, did not correct the problem.

On April 12, 2016, defendant sent two field service engineers to investigate the issues. After observing the problem, the engineers installed a new nozzle and indicated the problems were solved. Based on this statement, plaintiff told its customers that "orders would now be filled shortly." Yet, by April 28, 2016, the problems continued. In May, another service engineer visited plaintiff, Marcotte remained on site from May 2-6, and defendant's national laser product manager visited plaintiff to try to resolve the issues. The national laser product

manager indicated the issue was the lens cleaning procedure used by plaintiff. Plaintiff changed their lens cleaning procedure and again reached out to its customers to urge them not to cancel their orders. Days later, the machines began cutting inconsistently again. Between May 16 and May 19, the national laser product manager, Marcotte, and two engineers were on site. During that time, the engineers reinstalled the equipment and indicated the problems were solved. But, by May 27, 2016, the cutting problems had gotten worse.

During June, July, and August of 2016, the machines were running, albeit at speeds below their promised specifications. From September 6-9, 2016, two engineers and the national laser product manager were on site and indicated they had identified the problem. From September 26-29, 2016, these employees returned and indicated the problem had been a worn-out washer. Plaintiff alleges the washer was never the issue; rather, there was a design flaw which was corrected during the late September visit. After this visit, "[t]he inconsistent cutting issues were now largely resolved with the modification of the design of the machine, but it was too late as the damage had been done, as customers lost confidence in [plaintiff] due to its inability to deliver properly cut fabricated products over the previous seven (7) months." Due to this loss of customers, plaintiff "was forced to cease operations."

## **DISCUSSION**

Defendant has moved under Fed. R. Civ. P. 12(b)(6) to dismiss the first amended complaint ("complaint") for failure to state a claim, or, alternatively, to strike the jury demand. A motion under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). The court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in plaintiff's favor. Roberts

3

v. City of Chicago, 817 F.3d 561, 564 (7th Cir. 2016). The complaint must allege sufficient facts that, if true, would raise a right to relief above the speculative level, showing that the claim is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). To be plausible on its face, the complaint must plead facts sufficient for the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## Count I: Breach of Express Warranty

Illinois has adopted Article 2 of the U.C.C. 810 ILCS 5/2-101, et seq.; In re: Rust-Oleum Restore Mktg. Liab. Litigation, 155 F. Supp. 3d 772, 786 (N.D. Ill. 2016). As such, an express warranty can "limit[] the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of non-conforming good or parts . . . ." 810 ILCS 5/2-719(1)(a). In the instant case, the warranty provided:

> Purchaser's sole and exclusive remedy under the warranty shall be limited to, at seller's sole discretion, the replacement or repair of any defective equipment or part thereof, or a refund of the purchase price paid by purchaser for the equipment in exchange for purchaser's return of the equipment to seller . . . .

The parties do not dispute that their contract included this warranty. Nor do they dispute that the warranty was implicated by the failure of the laser-cutting machines. Rather, defendant argues that its numerous attempts to fix the machines over the course of seven months, and ultimately modifying the machines to meet their specifications, satisfied its obligations under the warranty. Plaintiff, however, argues that the warranty failed of its essential purpose because it took seven months for defendant to get the machines to perform at their promised specifications, and that this failure makes the limited remedy of repair and replace unenforceable.

The U.C.C., as adopted by Illinois, provides that "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Act." 810 ILCS 5/2-719(2). A limited remedy, however, does not "fail[] 'of its essential purpose' whenever a contracting party loses money because a limited remedy provision prevents him from being fully reimbursed for the damages caused by the other party's breach." J.D. Pavlak, Ltd. v. William Davies Co., 351 N.E.2d 243, 246 (Ill. App. Ct. 1976). Further, "[i]t is unusual for a remedy to fail of its essential purpose, but this typically occurs when a contract's primary remedy is repair or replacement of defective parts, and this remedy fails to put the goods in their warranted condition." Sunny Indus. v. Rockwell Int'l Corp., 1999 WL 220109, at *10 (7th Cir. Apr. 12, 1999). A remedy may fail of its essential purpose, however, when "the repair or replacement of the defective parts takes an unreasonable amount of time or number of attempts . . . ." Zwicky v. Freightliner Custom Chassis Corp., 867 N.E.2d 527, 535 (Ill. App. Ct. 2007).

Whether a remedy fails of its essential purpose is a fact-driven question and is not typically appropriate for resolution on a motion to dismiss. In re: Rust-Oleum Liab. Litigation, 155 F. Supp. 3d at 789. Defendant points out that plaintiff admits that ultimately, "[t]he inconsistent cutting issues were [] largely resolved with the modification of the design of the machine . . . ." Defendant argues that this distinguishes the instant case from the cases cited in plaintiff's response where no repair was ever successful. Plaintiff's complaint, however, alleges that the machines were not fully repaired for seven months. It will need to be determined whether this was "an unreasonable amount of time or number of attempts." See, Zwicky, 867 N.E.2d at 535. Because whether the remedy failed of its essential purpose is a fact-driven

5

question, and because the court draws all reasonable inferences in plaintiff's favor, plaintiff's allegations are sufficient to state a claim.

Defendant further argues that Count I should be dismissed because plaintiff did not attach the contract to the pleading. When reviewing a motion to dismiss, the court is limited to the four corners of the complaint. Scibetta v. Rehtmeyer, Inc., 2005 WL 331559, at *1–2 (N.D. Ill. Feb. 9, 2005). The court may, however, also consider "[a]ny exhibits attached to a complaint, as well as documents attached to a motion to dismiss that are referred to in a complaint and central to a plaintiff's claim . . . ." Id. at *2. Although the contract was not attached to the complaint or the motion to dismiss, portions of the warranty were quoted in plaintiff's complaint, the full contract was previously filed in this case as an attachment to defendant's earlier motion to transfer (see, Doc. 4), and the full contract is repeatedly cited in the complaint.

Defendant also argues that Count I should be dismissed because the complaint does not explicitly allege that the remedy failed of its essential purpose. It is true that Count I does not specifically allege that the remedy failed of its essential purpose, but under Fed. R. Civ. P. 12(b)(6), the court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in plaintiff's favor. Roberts, 817 F.3d at 564. Plaintiff's allegation that the repairs took seven months alleges sufficient facts to infer that the remedy failed of its essential purpose.

Lastly, defendant argues that Count I should be dismissed because plaintiff sought consequential damages, which were expressly excluded under the contract. The damage exclusion provision of the contract states:

6

> In no event shall seller's liability hereunder or otherwise arising relative to the sale of the equipment exceed in any event or under any theory or cause of action, the purchase price paid by purchaser to seller for the equipment.

There is no dispute that this damages limitation is valid. Rather, plaintiff argues that if the remedy failed of its essential purpose, plaintiff may seek consequential damages notwithstanding the damages limitation. Illinois uses an independent approach that treats the limited remedy and the damages exclusion as two, independent provisions. Razor v. Hyundai Motor Am., 854 N.E.2d 607, 619 (Ill. 2006). The Razor court explained this distinction as follows:

> The two provisions—limitation of remedy and exclusion of consequential damages—can be visualized as two concentric layers of protection for a seller. What a seller would most prefer, if something goes wrong with a product, is simply to repair or replace it, nothing more. This "repair or replacement" remedy is an outer wall, a first defense. If that wall is breached, because the limited remedy has failed of its essential purpose, the seller still would prefer at least not to be liable for potentially unlimited consequential damages, and so he builds a second inner rampart as a fallback position. That inner wall is higher, and more difficult to scale—it falls only if unconscionable.

Razor, 854 N.E.2d at 619

Therefore, even if the limited remedy failed of its essential purpose, the damages limitation would still be in effect, and plaintiff can not recover consequential damages. Thus, plaintiff's claim for consequential damages is dismissed.

## Count II: Breach of Implied Warranty

The U.C.C., as adopted by Illinois, allows parties to exclude implied warranties. 810 ILCS 5/2-316(3)(a). The parties do not dispute that the contract includes the following exclusion of implied warranties:

> Seller's warranty herein is in lieu of and excludes all other warranties of seller, . . . express, implied or statutory, or otherwise created under applicable law, including

but not limited to, any warranty of merchantability and any warranty of fitness for a particular purpose or use.

Notwithstanding this provision, plaintiff alleges a breach of the implied warranties of merchantability and of fitness for a particular purpose. Under Illinois law, "to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous." 810 ILCS 5/2-316(2). The instant provision specifically mentions merchantability and fitness for a particular purpose. Moreover, the provision was in all capital letters and boldface. Thus, the language was conspicuous, and the implied warranties were waived.

Although the contract explicitly waives these warranties, plaintiff argues that it can still bring a claim for breach of the implied warranties because the express warranty failed of its essential purpose. Plaintiff notes that 810 ILCS 5/2-719(2) provides, "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Act." Plaintiff relies on Smith v. Navistar Int'l Trans. Corp., 714 F. Supp. 303 (N.D. Ill. 1989), for the proposition that the breach of an express warranty allows a party to seek relief for breach of an implied warranty, even if that implied warranty has been expressly disclaimed. As defendant points out, however, this court has since held that, "the fact that the limited remedies may or may not fail in their essential purpose does not bear upon the validity of excluding the implied warranties." Walter Raczynski Prod. Design v. IBM Corp., 1993 WL 282722, at *16 (N.D. Ill. July 21, 1993). As one court has stated:

> Breach of an express warranty gives rise to a claim of breach based on that express warranty. The disclaimer of other warranties is irrelevant to whether the "assurance" given by the express warranty had ultimately turned out to be untrue. If warranties sprang into existence upon the breach of other warranties, the Court would be imputing to one contracting party 'assurances' that it intended not to make.

Southwest Eng'g, Inc. v. Yeomans Chi. Corp., 2009 WL 3720374, at *4 (S.D. Cal. Nov. 3, 2009).

Plaintiff's allegation that defendant breached the express warranty has no bearing on whether the waiver of implied warranties is enforceable. Plaintiff has not claimed that the instant waiver is unconscionable or otherwise unenforceable. Thus, plaintiff's claims for breach of implied warranty is barred by the contract and Count II is dismissed.

### Count III: Fraud

Defendant argues that Count III does not provide fair notice of the type of fraud alleged, and thus plaintiff's fraud claim should be dismissed. Iqbal, requires the defendant to provide "fair notice of what the . . . claim is and the grounds upon which it rests." Iqbal, 556 U.S. at 698–99 (citations omitted). The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While plaintiff's complaint does not allege a specific type of fraud, plaintiff's allegations are sufficient to give defendant notice of what they need to defend against.

To state a claim for common law fraud, a plaintiff must allege: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." Connick v. Suzuki Motor Co., 675 N.E.2d 584, 592 (Ill. 1996). Moreover, a claim for fraud must meet a heightened

pleading requirement. Fed. R. Civ. P. 9(b); DiLeo v. Ernst & Young, 901 F.2d 624, 628 (7th Cir. 1990). The Seventh Circuit requires the plaintiff to state "the who, what, when, where, and how: the first paragraph of any newspaper story." DiLeo, 901 F.2d at 628. "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

The complaint alleges in detail that various agents of defendant knowingly provided false and misleading statements of material facts throughout the seven-month period that defendant was repairing the machines. Plaintiff claims it relied on these statements in making promises to its customers that the production problems were solved, that long overdue orders would be filled, and that defendant knew petitioner would make such statements to its customers. Thus, the complaint states "with particularity the circumstances constituting fraud or mistake," as required by Fed. R. Civ. P. 9(b). Therefore, Count III states a claim because the complaint meets the heightened pleading standard.

## Jury Demand

Defendant has moved to strike plaintiff's jury demand based on a waiver contained in the contract. "Although the Seventh Amendment to the United States Constitution guarantees the right to a jury trial in civil cases, this right is waivable." Whirlpool Fin. Corp. v. Sevaux, 866 F. Supp. 1102, 1105 (N.D. Ill. 1994). In the instant case, the contract provides, in all capital letters and in bold face type, that "purchaser waives the right to trial by jury." The validity of a jury waiver is governed by state law. IFC Credit Corp. v. United Bus. & Indus. Fed. Credit Union, 512 F.3d 989, 994 (7th Cir. 2008). The parties agree that the Illinois Supreme Court has not ruled on the enforceability of a jury waiver clause.

Plaintiff directs the court to the four factors set out in <u>Sevaux</u>, "(1) the parties' negotiations concerning the waiver provision, if any, (2) the conspicuousness of the provision, (3) the relative bargaining power of the parties and (4) whether the waiving party's counsel had an opportunity to review the agreement." <u>Sevaux</u>, 866 F. Supp. at 1105. These factors are used to determine if the waiver was entered into knowingly and voluntarily. <u>Id.</u> Plaintiff argues that defendant has not proven these factors, and that the express waiver should thus not be enforced. Plaintiff, however, also does not allege that it did not agree to the waiver knowingly and voluntarily. Both parties are sophisticated, and the jury waiver was conspicuous. Therefore, defendant's motion to strike the jury demand is granted.

## **CONCLUSION**

For the foregoing reasons, the court grants in part and denies in part defendant's motion (Doc. 33) to dismiss for failure to state a claim. The court grants defendant's motion to dismiss Count II. The court further grants defendant's motion to dismiss plaintiff's claim for consequential damages under Count I. The court otherwise denies defendant's motion to dismiss Count I. The court grants defendant's motion to strike the jury demand. The court denies defendant's motion to dismiss Count III. Defendant is directed to answer the remaining counts of the complaint on or before April 15, 2019. The parties are directed to file a joint status report using this court's form on or before April 18, 2019. This matter is set for a report on status April 25, 2019, at 9:00 a.m.

**ENTER:** **March 21, 2019**

_____
**Robert W. Gettleman
United States District Judge**